UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BRENDA DILLARD, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> PLATFORM SPECIALTY PRODUCTS CORPORATION, RAKESH SACHDEV, DANIEL H. LEEVER, SANJIV KHATTRI, and FRANK J. MONTEIRO, <br><br> Defendants. | Case No. <br><br> COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br> <u>CLASS ACTION</u> <br><br> <u>DEMAND FOR JURY TRIAL</u> |

## CLASS ACTION COMPLAINT

Plaintiff Brenda Dillard ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Platform Specialty Products Corporation ("Platform" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Platform securities between February 17, 2015 and March 14, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Platform produces and sells specialty chemical products in the Americas, the Asia-Pacific region, and Europe. The Company operates through two segments, Performance Solutions and Agricultural Solutions.

3.      Platform was founded in 1922.  Formerly known as Platform Acquisition Holdings Limited, the Company changed its name to Platform Specialty Products Corporation in October 2013.  Platform is headquartered in West Palm Beach, Florida.  The Company's stock trades on the NYSE under the ticker symbol "PAH."

4.      On February 17, 2015, Platform completed the acquisition of Arysta LifeScience Limited ("Arysta"), a crop protection and life science company with operations in more than 125 countries worldwide.

5.      Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Arysta had made improper third-party payments in West Africa; (ii) that the foregoing payments were unlawful under the U.S. Foreign Corrupt Practices Act ("FCPA"); and (iii) as a result of the foregoing, Platform's public statements were materially false and misleading at all relevant times.

6.      On March 11, 2016, Platform disclosed in its 2015 annual report that the Company had "discovered certain payments made to third-party agents in connection with Arysta's government tender business in West Africa which may be illegal or otherwise inappropriate" and had "engaged outside counsel and an outside accounting firm to conduct an internal investigation to review the legality of these and other payments . . . including Arysta's compliance with the FCPA."

7.      On this news, Platform stock fell $0.28 per share, or 3.16%, to close at $8.57 on March 14, 2016, the following trading day.

8.      On March 14, 2016, shortly before the end of the trading day, the *Wall Street Journal* published a story addressing the disclosures by Platform described in ¶ 6, entitled "Chemical Company Notifies U.S. of West Africa FCPA Probe."

9.      On this news, Platform stock fell $0.62 per share, or 7.23%, to close at $7.95 on March 15, 2016.

10.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

13.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as the Company is headquartered within this District.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired Platform securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Platform is incorporated in Delaware, and the Company's principal executive offices are located at 1450 Centrepark Boulevard, Suite 210, West Palm Beach, Florida 33401.

17.     Defendant Rakesh Sachdev ("Sachdev") has served as Platform's Chief Executive Officer ("CEO") since January 2016.

18.     Defendant Daniel H. Leever ("Leever") served as Platform's CEO from October 2013 until December 2015.

19.     Defendant Sanjiv Khattri ("Khattri") has served as Platform's Chief Financial Officer ("CFO") since September 2015.

20.     Defendant Frank J. Monteiro ("Monteiro") served as Platform's CFO from October 2013 until August 2015.

21.     The defendants described in ¶¶ 17-20 are sometimes hereinafter referred to as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Platform produces and sells specialty chemical products in the Americas, the Asia-Pacific region, and Europe. The Company operates through two segments, Performance Solutions and Agricultural Solutions.

23.     Platform was founded in 1922.  Formerly known as Platform Acquisition Holdings Limited, the Company changed its name to Platform Specialty Products Corporation in October 2013.  Platform is headquartered in West Palm Beach, Florida.

### Materially False and Misleading Statements Issued During the Class Period

24.     The Class Period begins on February 17, 2015, when Platform issued a press release and filed a Form 8-K with the SEC announcing the completion of its acquisition of Arysta for approximately $3.51 billion (the "Arysta Acquisition 8-K").   In the Arysta Acquisition 8-K, Platform stated, in part:

> The closing of this acquisition marks Platform's third acquisition within the crop protection operating segment after the acquisitions of Agriphar on October 1, 2014 and Chemtura AgroSolutions ("CAS") on November 3, 2014. Through the Arysta, CAS and Agriphar businesses, Platform has an operating agrochemicals footprint in more than 100 countries and expects to benefit from a global supply chain that should allow operational efficiencies to become realized almost immediately. Platform expects to realize in excess of $65 million in synergies from the combination of these businesses over the next three years. Upon closing of the acquisition, Arysta's President and Chief Executive Officer, Wayne Hewett, became Platform's President, leading the agrochemical businesses and overseeing Platform's ongoing operations.

25.     On this news, Platform's share price climbed $0.75, or 3.3%, to close at $23.43 on February 17, 2015.

26.     On March 18, 2015, Platform issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the quarter and year ended December 31, 2014 (the "2014 8-K").  For the quarter, Platform reported a net loss of $266.7

million, or $1.59 per diluted share, compared to a net loss of $200.1 million for the same period in the prior year.  For 2014, Platform reported a net loss of $262.7 million, or $0.59 per diluted share, compared to a net loss of $203.5 million for 2013.

27.     In the 2014 8-K, defendant Leever stated, in part:

With the Arysta acquisition—our third and largest AgroSolutions acquisition—completed we have expanded our leadership capabilities and have already accelerated our integration plans. Based on our progress in integration and integration planning in just the past month, we are revising our projected three-year synergy target upwards from $65 million to $80 million.

28.     On March 30, 2015, Platform filed an annual report on Form 10-K with the SEC for the quarter and year ended December 31, 2014 (the "2014 10-K").  The 2014 10-K reiterated the financial and operating results previously announced in the 2014 8-K.

29.     In the 2014 10-K, Platform stated, in part:

Africa and Middle East represent our most unique region from a sales and marketing perspective due to relatively lower levels of existing distribution infrastructure.  In addition, *growers in these markets may not have access to sufficient amounts of capital and may rely on government programs in order to procure our products.*  In Africa, we have developed an extensive regional distribution network to enable us to deliver our products and products of our distribution partners, including Syngenta and Japanese manufacturers, to the grower.  For example, *in West Africa, we own or operate through partnerships over 90 retail stores.  In many cases, growers in this region require additional customer outreach and education as our products and the agronomic techniques to apply them are relatively newer to this market.*  Strong grower relationships, deep customer relationships, and a more robust marketing organization are key elements of creating demand and growing sales and profitability in this region.

. . .

We are subject to the FCPA, which prohibits companies and their intermediaries from making payments in violation of law to non-U.S. government officials for the purpose of obtaining or retaining business or securing any other improper advantage.

. . .

6

We maintain a Business Conduct and Ethics Policy and a Code of Ethics for Senior Financial Officers which were approved by our Board and cover compliance with the FCPA and similar anti-corruption laws, as well as other legal areas applicable to our operations. We provide compliance training to our employees in an effort to raise awareness, foster compliance and set an expectation of compliance at all levels within the Company. The Business Conduct and Ethics Policy establishes a duty to report non-compliance and provides avenues for making such reports, including a reporting hotline. We also maintain a system for auditing compliance with applicable laws. (emphases added.)

30.     The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Leever and Monteiro, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.     On May 12, 2015, Platform issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 8-K"). For the quarter, Platform reported a net loss of $26.3 million, or $0.14 per diluted share, compared to a net loss of $5.9 million, or $0.07 per diluted share for the same period in the prior year.

32.     In the 2015 8-K, defendant Leever stated, in part:

We had a busy yet exciting start to 2015 as we completed the Arysta acquisition and rapidly began integrating our Agricultural Solutions businesses. Our efforts have already resulted in meaningful synergies, and our strategy to focus on specialty crops in niche sectors enabled us to outperform the sector this quarter.

33.     On May 15, 2015, Platform filed a quarterly report on Form 10-K with the SEC for the quarter ended March 31, 2015 (the "Q1 2015 10-Q"). The Q1 2015 10-Q reiterated the financial and operating results previously announced in the Q1 2015 8-K.

34.     The Q1 2015 10-Q contained signed certifications pursuant to SOX by defendants Leever and Monteiro, stating that the financial information contained in the Q1 2015 10-Q was

accurate and disclosed any material changes to the Company's internal control over financial reporting.

35.     On August 13, 2015, Platform issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q").  For the quarter, Platform reported a net loss of $9.1 million, or $0.06 per diluted share, compared to a net loss of $1.5 million, or zero per diluted share for the same period in the prior year.

36.     On August 14, 2015, Platform filed a quarterly report on Form 10-K with the SEC for the quarter ended June 30, 2015 (the "Q2 2015 10-Q").  The Q2 2015 10-Q reiterated the financial and operating results previously announced in the Q2 2015 8-K.

37.     The Q2 2015 10-Q contained signed certifications pursuant to SOX by defendants Leever and Monteiro, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

38.     On August 17, 2015, Platform announced the appointment of defendant Monteiro as Chief Operating Officer of Platform's subsidiary MacDermid, Incorporated and Platform's Performance Applications segment, and the appointment of defendant Khattri as defendant Monteiro's successor as CFO of Platform, effective September 14, 2015.

39.     On November 10, 2015, Platform issued a press release and filed a quarterly report on Form 8-K with the SEC announcing the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 8-K").  For the quarter, Platform reported a net loss of $122.3 million, or $0.58 per diluted share, compared to net income of $11.9 million, or $0.08 per diluted share, for the same period in the prior year.

40.     In the Q3 2015 8-K, the Company's Chief Operating Officer Benjamin Gliklich stated, in part:

> *The integration process within Platform's Agricultural Solutions segment continues to be a bright spot for Platform. We are ahead of schedule with approximately $13 million of realized synergies in the third quarter of 2015, for a total of $26 million since the close of the Arysta acquisition in first quarter of 2015.* Synergies this quarter represent a run-rate of over $50 million. With the financing marketing almost complete, we are now singularly focused on execution and delivering growth and cash flow to our shareholders. (emphasis added).

41.     On November 16, 2015, Platform filed a quarterly report on Form 10-K with the SEC for the quarter ended September 30, 2015 (the "Q3 2015 10-Q").  The Q3 2015 10-Q reiterated the financial and operating results previously announced in the Q3 2015 8-K.

42.     The Q3 2015 10-Q contained signed certifications pursuant to SOX by defendants Leever and Khattri, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

43.     On December 16, 2015, Platform announced the retirement of defendant Leever as Platform's CEO, effective immediately, and the appointment of defendant Sachdev as Leever's successor, effective January 5, 2016.

44.     The statements referenced in ¶¶ 24-37 and 39-42 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Arysta had made improper third-party payments in West Africa; (ii) that the foregoing payments were unlawful under the U.S. Foreign Corrupt Practices Act ("FCPA"); and (iii) as a

result of the foregoing, Platform's public statements were materially false and misleading at all relevant times.

### <u>The Truth Emerges</u>

45.     On March 11, 2016, Platform filed an annual report on Form 10-K with the SEC for the quarter and year ended December 31, 2015 (the "2015 10-K").  For the quarter, Platform reported a net loss of $147.40 million, or $0.68 per diluted share, on revenue of $735.10 million, compared to a net loss of $33.98 million, or $1.61 per diluted share, on revenue of $273.56 million for the same period in the prior year.  For 2015, Platform reported a net loss of $307.60 million, or $1.52 per diluted share, on revenue of $2.54 billion, compared to a net loss of $29.90 million, or $1.94 per diluted share, on revenue of $843.20 million for 2014.

46.     In its 2015 10-K, Platform disclosed that the Company had "discovered certain payments made to third-party agents in connection with Arysta's government tender business in West Africa which may be illegal or otherwise inappropriate" and had "engaged outside counsel and an outside accounting firm to conduct an internal investigation to review the legality of these and other payments . . . including Arysta's compliance with the FCPA."

47.     As a result of this news, Platform stock fell $0.28 per share, or 3.16%, to close at $8.57 on March 14, 2016, the following trading day.

48.     On March 14, 2016, shortly before the end of the trading day, the *Wall Street Journal* published a story addressing the disclosures described in ¶¶ 6 and 46, entitled "Chemical Company Notifies U.S. of West Africa FCPA Probe."

49.     On this news, Platform stock fell $0.62 per share, or 7.23%, to close at $7.95 on March 15, 2016.

50.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

51.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Platform securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

52.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Platform securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Platform or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

53.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

54.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

55.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Platform;

- whether the Individual Defendants caused Platform to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Platform securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

57.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Platform securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Platform securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

58.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

59.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

62.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Platform securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Platform securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

63.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Platform securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Platform's finances and business prospects.

64.     By virtue of their positions at Platform, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

65.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Platform securities from their personal portfolios.

66.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Platform, the Individual Defendants had knowledge of the details of Platform's internal affairs.

67.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Platform.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Platform's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Platform securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Platform's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Platform securities at artificially inflated prices and relied upon the price of the securities,

the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

68.     During the Class Period, Platform securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Platform securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Platform securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Platform securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

69.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

71.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     During the Class Period, the Individual Defendants participated in the operation and management of Platform, and conducted and participated, directly and indirectly, in the conduct of Platform's business affairs.  Because of their senior positions, they knew the adverse non-public information about Platform's misstatement of income and expenses and false financial statements.

73.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Platform's financial condition and results of operations, and to correct promptly any public statements issued by Platform which had become materially false or misleading.

74.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Platform disseminated in the marketplace during the Class Period concerning Platform's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Platform to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Platform within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Platform securities.

75.     Each of the Individual Defendants, therefore, acted as a controlling person of Platform.  By reason of their senior management positions and/or being directors of Platform, each

17

of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Platform to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Platform and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

76.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Platform.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  March 30, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jayne A. Goldstein*

Jayne A. Goldstein (FL Bar No.: 144088)
1792 Bell Tower Lane, Suite 203
Weston, Florida 33326
Telephone:  (954) 315-3454
Facsimile:  (954) 315-3455
Email:  jagoldstein@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com
          mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
13650 Marina Pointe Dr. Ste. 1404
Marina Del Rey, CA 90292
Telephone: 800-977-7401
Fax: 800-536-0065
Email:  michael@goldberglawpc
          brian@goldberglawpc

*Attorneys for Plaintiff*

19

# Plaintiff's Certification

I, BRENDA DILLARD, certify that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in the security that is the subject of the complaint during the class period specified in the complaint are as follows:

I bought 30 shares on 02/29/2016 at $7.00
I bought 15 shares on 08/24/2015 at $18.00
I bought 5 shares on 03/26/2015 at $25.00

5. Plaintiff has not sought to serve, or served, as a representative party on behalf of a class under this title during the 3-year period preceding the date on which this certification is signed, except as follows:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: 3/22/2016

**PLATFORM SPECIALTY PRODUCTS CORPORATION (PAH)**          **Dillard, Brenda**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 3/26/2015 | Purchase | 5 | $25.0000 |
| 8/24/2015 | Purchase | 15 | $18.0000 |
| 2/29/2016 | Purchase | 30 | $7.0000 |